UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

GARY LEE PULLEN,                                    Case No. 1:16-cv-894
    Plaintiff,

                                 Barrett, J.
   vs.                                             Litkovitz, M.J.

CORRECTIONAL OFFICER                                **ORDER AND REPORT**
CONSCHAFSKY, et al.,                                **AND RECOMMENDATION**
    Defendants.

       Plaintiff, a prisoner at the Southern Ohio Correctional Facility (SOCF), filed a pro se civil rights complaint in this Court against defendants Warden Erdos, Deputy Warden Cool, Unit Manager Administrator Ms. C. Davis, Unit Manager Mr. Oppie, Officer Conschafsky, Officer Toppins, Officer Spears, Officer Cassner, Institutional Inspector Mrs. L. Mahlman, Medical Administrator Ms. Clagg, Jane Doe Nurse, Rules Infraction Board (RIB) Chairman Mr./Sgt. Sammons, Appeal Coordinator/Assistant Warden Larry Green, Officer Sears, and Lt. Broughton. (Doc. 7). On December 2, 2016, the undersigned issued an Order and Report and Recommendation, finding that plaintiff could proceed with this Eighth Amendment failure to protect claims against defendants Conschafsky, Toppins, Spears, Erdos, Cool, and Davis and recommending that the remaining claims alleged in the complaint be dismissed for failure to state a claim upon which relief may be granted. (Doc. 8).

       Plaintiff has since filed a motion for leave to amend his complaint (Doc. 19), naming the following twenty-nine individuals as defendants: Correctional Officers Conschafsky, Toppins, Summers, Spears, Cassner, Reece, and Irwin; Warden Ron Erdos; Deputy Warden William Cool; Institutional Inspector Ms. Mahlman; Unit Managers Nolan, Cynthia Davis, Brian Sparks, and Oppie; Doctors Seal, Lahr, and Ford; Mental Health Liaison Mr. Parsons; Sergeant Chinn; Lieutenants Haywood and Broughton; Nurses McDonald and Goodman; Captains Howard and

Bell; RIB Supervisor Larry Green; RIB Chairman Sergeant Sammons; Mental Health Director

Mr. Prise; and Major Warren. Plaintiff's motion to file an amended complaint is hereby

**GRANTED.**

This matter is now before the Court for a *sua sponte* review of the amended complaint

to determine whether the complaint, or any portion of it, should be dismissed because it is

frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary

relief from a defendant who is immune from such relief. *See* Prison Litigation Reform Act of

1995 § 804, 28 U.S.C. § 1915(e)(2)(B); § 805, 28 U.S.C. § 1915A(b).

In enacting the original *in forma pauperis* statute, Congress recognized that a "litigant

whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an

economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton*

*v. Hernandez,* 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 324 (1989)).

To prevent such abusive litigation, Congress has authorized federal courts to dismiss an *in*

*forma pauperis* complaint if they are satisfied that the action is frivolous or malicious. *Id.*; *see*

*also* 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1). A complaint may be dismissed as

frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or

law. *Neitzke v. Williams,* 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d

1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is

immune from suit or when plaintiff claims a violation of a legal interest which clearly does not

exist. *Neitzke,* 490 U.S. at 327. An action has no arguable factual basis when the allegations

are delusional or rise to the level of the irrational or "wholly incredible." *Denton,* 504 U.S. at

32; *Lawler,* 898 F.2d at 1199. The Court need not accept as true factual allegations that are

2

"fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

Congress also has authorized the *sua sponte* dismissal of complaints that fail to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915 (e)(2)(B)(ii) and 1915A(b)(1). A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). By the same token, however, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hill*, 630 F.3d at 470-71 ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual

enhancement." *Id.* at 557. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citations omitted).

In the amended complaint, plaintiff claims that on April 3, 2016, defendant Officer Toppins opened plaintiff's door to allow plaintiff to use the phone. (Doc. 19, at PageID 158). Plaintiff alleges that inmate Sinclair became irate over plaintiff using the available phone time. (*Id.* at PageID 159). According to plaintiff, he told Sinclair that if the block managers would use a phone sign up list inmates would not have to fight over the phones and Sinclair threatened, "I'm going to come out of my cell and bust your bitch ass up-side your fucking head." (*Id.*). Plaintiff claims that defendant Conschafsky observed the argument and stated, "I don't want to do any paperwork," which plaintiff claims means he did not want to write conduct reports for an inmate fight. (*Id.*). Plaintiff claims defendant C/O Toppins ordered plaintiff to stop arguing with Sinclair over the intercom and plaintiff returned to his cell. Sinclair allegedly threatened plaintiff on the way back to his cell, threatening to kill plaintiff and noting that the SOCF correctional officers and administrators do not like plaintiff or his "snitch ass brother (Terry Pullen)." (*Id.* at PageID 160).

Plaintiff claims that Toppins then opened all the cell doors so that the range could go to dinner. According to plaintiff, he observed Sinclair with a fan motor wrapped around his hand. Conschafsky allegedly ordered the range into the "bull-pen" and observed Sinclair with the fan motor. Plaintiff claims that Conschafsky pulled his O/C spray and watched Sinclair walk by him and begin to attack plaintiff with the fan motor. (*Id.* at PageID 161). Plaintiff claims he called for Conschafsky to help him, but that he "refused to act and instead hid himself." (*Id.*).

Plaintiff claims that he subsequently filed informal complaint resolutions regarding Conschafsky and Toppins' failure to protect him and inappropriate supervision with defendants

4

Mahlman and Captain Bell.  Plaintiff also claims to have requested protective custody from defendant Mahlman.  On April 12, 2016, plaintiff states that he contacted defendant Unit Manager Nolan, expressing that he feared for his life "upon belief that the attack was orchestrated by SOCF's prison officials as a retaliation tactic" for his brother's filing civil law suits against SOCF officials and not regulating the phone list.  (*Id.*).

Plaintiff next alleges that on April 4, 2016, he contacted defendant Dr. Seal, explaining that he had been brutally attacked and the attack caused him to want to hurt himself.  According to plaintiff, he requested that Dr. Seal place him in a residential treatment unit, which he claims "could help plaintiff avoid future attacks and [get] better mental health treatment." (*Id.* at PageID 162).  Plaintiff claims he saw Dr. Seal on April 6, 2016, again making him aware of the attack and explaining his concerns that prison officials failed to protect him from harm.  Plaintiff also claims that he informed defendant Parsons about his concerns the following day.

After being released from the medical unit, plaintiff claims that on April 11, 2016, he informed defendant Warden Ron Erdos of the attack.  According to plaintiff, Erdos stated that he was aware of the attack and that he spoke with Sinclair, who claimed that plaintiff was bullying other inmates over use of the phone.  (*Id.* at PageID 164).  Plaintiff claims he told Erdos that block officers were not regulating phone use appropriately which caused inmates to argue and fight one another over the phone.  Erdos told plaintiff that he needed to contact defendant unit manager Cynthia Davis for protective custody requests.

Plaintiff claims that on April 11, 2016, he observed a February 11, 2016 memo indicating that unit management was taking steps to decrease issues arising over phone issues.  However, plaintiff claims that he continued to experience issues using the phone in the next couple months

"due to L 7 Block Officer (Defendant Cassner) refusing to [use a] phone-list to eliminate inmate violence over the phone." (*Id.* at PageID 165).

Next, plaintiff claims that on or about May 18, 2016, he was threatened by another inmate to not "stick out his hand for the phone or Plaintiff will get his ass kicked." (*Id.*). According to plaintiff, he attempted to stop Cassner, but Cassner told him "you filed ICR on Con (Conschafsky) and got my partner fired, so you don't have shit coming bitch." (*Id.*). Cassner allegedly told plaintiff to "shut up snitch" when plaintiff indicated that he needed to use the phone and announced to the block that plaintiff wanted to utilize a phone list. (*Id.* at 165–66). Plaintiff claims that the other inmates became enraged with Cassner calling him a snitch and threatened him with physical harm. Plaintiff claims that Cassner and other defendants began to wage a campaign of harassment against him for filing complaints regarding their failure to utilize a phone list system.

On or about June 21, 2016, plaintiff claims Cassner delivered unit mail to plaintiff, which consisted of two Informal Complaint Resolutions (ICRs) that plaintiff filed against Cassner. Plaintiff alleges that as Cassner walked away from his cell he stated "Pullen you have until Saturday to get out [of] my Block (L7 Block). If you[ are] not gone when I come back, you[ are] going to K7 Disciplinary Block." (*Id.* at PageID 166–67). Later that day, plaintiff alleges that Sgt. Chinn and Officer Jones came to his cell and took him to the captain's office. According to plaintiff, Lt. Haywood explained to him that if he went on suicide watch, Lt. Haywood would tell Cassner to "hook inmate Pullen's conduct report up." (*Id.* at PageID 167). It appears from the complaint and attached exhibits, that Cassner issued a conduct report against plaintiff on June 21, 2016. (*See id.*, Ex. 11 at PageID 265). Plaintiff alleges that Cassner fabricated the conduct report and had him sent to segregation just for harassment purposes. Plaintiff indicates that he

6

was having suicidal thoughts because Cassner lied about the conduct report and chose to go on suicide watch. Plaintiff complains that "on belief and information . . . defendants Lt. Haywood, Sgt. Chinn, Deputy Cool, RIB Chairman Sammons did not hold proper disciplinary hearing before placing Plaintiff in [Limited Privileges Housing Unit] Block." (*Id.*).

 Next, plaintiff alleges that on July 10, 2016 at approximately 4:00 p.m. inmate McCoy attacked him by beating him in the head and face repeatedly while defendants Spears and Summers watched and took no action. Following dinner, plaintiff claims Summers again permitted McCoy to attack him a second time. (*Id.* at PageID 169). According to plaintiff, Spears yelled to responding officers "kick his ass," referring to plaintiff. (*Id.* at PageID 170). As he did in his original complaint, plaintiff alleges that he told an unidentified nurse that he was okay "in an excited utterance." (*Id.*). Plaintiff indicates that defendant Nurse McDonald later came to his cell and provided him medication for his pain from the attacks.

At approximately 9:30 p.m. the same day, plaintiff claims that Captain Howard visited his cell and told plaintiff that he would look into the attacks. (*Id.* at PageID 171). Plaintiff claims that defendants Summers, Spears, Howard and on duty lieutenants of the captain's office conspired by having Summer write a conduct report to cover up the attacks to make plaintiff look like the aggressor and tampered with the DVR footage of the attacks.

Plaintiff claims Lt. Broughton stopped at his cell on July 18, 2016, stating that inmate McCoy admitted that he was the aggressor in both attacks and that plaintiff should request Broughton as a witness at his RIB hearing. (*Id.* at PageID 171–72). However, plaintiff claims he did not attend the hearing because Sears falsely told the RIB chairman that plaintiff refused to attend the RIB hearing. Plaintiff alleges that he has filed numerous ICRs and RIB appeals

requesting that defendants Erdos, Greene, and Sammons review the camera footage establishing that he never refused to attend the hearing but they refused.

Plaintiff next alleges that in March 2008 he attempted suicide and was diagnosed as "Schizo-effective disorder with hearing voices and suicidal thoughts processes." (*Id.* at PageID 173). Plaintiff claims that defendants SOCF mental health director Prise, Parsons, Nurse Goodman, and Dr. Seal have failed to "consider the plaintiff as 'serious medical need,' provide adequate mental health services, programing, RTU housing, assessments, and proper diagnosis." (*Id.*). Regarding his mental health treatment, plaintiff claims that on or about April 15, 2015, he requested mental health programing from Dr. Prise, but it was not provided. (*Id.* at 174). Plaintiff also claims that on May 18, 2015, he made a mental health request for medication, treatment, and RTU housing. Plaintiff claims as a result of his requests being denied, his mental health has deteriorated, "causing hearing more voices, delusional thinking, feel extremely depress[ed], having suicidal thoughts." (*Id.*). Plaintiff claims he has made SOCF's mental health staff aware of his serious medical needs, but that he is not being treated as a "serious medical need patient." (*Id.*).

Plaintiff claims that following the attacks, defendant Warden Erdos visited his cell and plaintiff made a request for protective custody. (*Id.* at PageID 175). Plaintiff indicates defendant Cool investigated whether defendants Chinn and Sammons failed to protect plaintiff by placing him in a block with higher security inmates. He also claims that he requested defendant Oppie to investigate whether plaintiff's placement placed him in danger, but that Oppie failed to cite procedures or policies to support the placement. Plaintiff further alleges that he requested protective custody from defendant Davis following the April 3, 2016 attack, but that Davis failed

to investigate plaintiff's claims that he and his brother were being physically threatened by gang members.

Regarding phone usage, plaintiff complains that the block officer's refusal to run a phone-list has resulted in inmates continuing to fight and argue over the phone. (*Id.* at PageID 176). Plaintiff claims that defendants disregarded his pleas for the use of a phone-list and "proper phone usages," resulting in inmates "eventually breaking the phone over frustration of not being able to use the phone." (*Id.*). Plaintiff claims he continues to experience denial of access to the phone.

Finally, the complaint includes allegations that Captain Bell provided a poor investigation into the attacks; he never investigated the actions of Conschafsky, Toppins, Summers, and Spears and whether they violated prison policies; and he performed a "botched investigation" of plaintiff's ICRs and complaints. (*Id.* at PageID 177). Without factual elaboration, plaintiff also asserts that Mahlman retaliated and harassed plaintiff by restricting his access to the grievance system. Plaintiff claims "Ms. Mahlman['s] actions investigating two violently (sic) attacks on Plaintiff is the reason Ms. Mahlman felt a need to restrict Plaintiff of his grievance rights." (*Id.*).

Based on the above factual allegations, plaintiff brings seven causes of action. In his first cause of action, plaintiff claims that defendants Conschafsky and Toppins violated his Eighth Amendment rights by failing to protect him from the April 3, 2016 attack. Plaintiff also claims that defendants Sparks, Warren, and Cool violated his constitutional rights by failing to protect him from harm during phone usage prior to the attack.

In his second cause of action, plaintiff brings an Eighth Amendment claim against defendants Nolan, Davis, and Mahlman based on their failure to place plaintiff in protective custody. Plaintiff also brings First Amendment claims against defendants Cassner, Conschafsky,

Toppins, Sparks, Warren, Cool, Irwin, and Reece based on his allegation that these defendants created a hostile environment which prevented him from using the phone. He also claims Cassner, Irvin, and Reece wrote false conduct reports against him.

In cause of action three, plaintiff claims that defendants Seal, Parsons, Prise, and Goodman failed to provide adequate medical care and that defendants Haywood, Chinn, Cool, Sammons, and Greene violated his due process rights in connection with the RIB hearing.

In his fourth cause of action, plaintiff claims that defendants Spears, Summers, and Bell failed to protect him from the July 10, 2016 attack in violation of his Eighth Amendment rights.

Plaintiff largely repeats his prior causes of action in causes of action five through seven. In cause of action five—similar to cause of action three—plaintiff claims that Block Officer Sears,[1] and defendants Chinn, Broughton, Sammons, Greene, and Erdos violated his due process rights, again in connection with the RIB hearing and subsequent appeal. In cause of action six, as he did in cause of action two, plaintiff claims defendants Davis, Cool, Mahlman, Seal, Prise, and Parsons violated his Eighth Amendment rights by failing to place him in protective custody. Finally, in his seventh cause of action plaintiff again claims that defendants Prise, Godman, Parsons, Seal, and Lahr, as well as Deputy Warden Cadogan,[2] failed to provide him with adequate mental health care.

For relief, plaintiff seeks monetary damages and injunctive and declaratory relief. (*Id.* at PageID 188–89).

---

[1] Although plaintiff named Sears as a defendant in his original complaint, plaintiff has not named Sears as a defendant to this action in the amended complaint. In any event, as noted below, plaintiff's allegations against Sears pertain to the RIB hearings and fail to state a claim upon which relief may be granted.

[2] Plaintiff has not named Cadogan as a defendant to this action. However, he does include allegations regarding this cause of action against defendant Dr. Ford in the body of the complaint (*see* Doc. 19 at PageID 174) and will be permitted to proceed with this claim against Ford.

At this stage in the proceedings, without the benefit of briefing by the parties to this action, the undersigned concludes that plaintiff may proceed with the following claims: (1) Eighth Amendment failure to protect claims against defendants Toppins, Conschafsky, Spears, and Summers based on his allegations that these defendants failed to protect him during the April 3, 2016 and July 10, 2016 attacks; (2) Eighth Amendment claims against defendants Nolan, Mahlman, Cool, Davis, and Erdos based on his claim that he requested protective custody from these defendants prior to the second attack; and (3) Eighth Amendment claim for the denial of medical care against defendants Seal, Parsons, Prise, Goodman, Lahr, and Ford.  However, plaintiff's remaining claims should be dismissed. *See* 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

Plaintiff's claims against all defendants in their official capacities must be dismissed to the extent that he seeks monetary damages.  Absent an express waiver, a state is immune from damage suits under the Eleventh Amendment. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139 (1993); *Edelman v. Jordan*, 415 U.S. 651 (1974).  The State of Ohio has not constitutionally nor statutorily waived its Eleventh Amendment immunity in the federal courts. *See Johns v. Supreme Court of Ohio*, 753 F.2d 524 (6th Cir. 1985); *State of Ohio v. Madeline Marie Nursing Homes*, 694 F.2d 449 (6th Cir. 1982).  The Eleventh Amendment bar extends to actions where the state is not a named party, but where the action is essentially one for the recovery of money from the state. *Edelman*, 415 U.S. at 663; *Ford Motor Company v. Dept. of Treasury*, 323 U.S. 459, 464 (1945).  A suit against defendants in their official capacities would, in reality, be a way of pleading the action against the entity of which defendants are agents. *Monell*, 436 U.S. at 690.  Thus, actions against state officials in their official capacities are included in this bar. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70-71 (1989); *Scheuer v. Rhodes*, 416 U.S. 232 (1974).  *See also Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010)

(citing *Cady v. Arenac Co.*, 574 F.3d 334, 344 (6th Cir. 2009) ("[A]n official-capacity suit against a state official is deemed to be a suit against the state and is thus barred by the Eleventh Amendment, absent a waiver." (citation and ellipsis omitted)).  Therefore, all of the named defendants are immune from suit in their official capacities.

Plaintiff's claim that defendants Sparks, Warren, and Cool violated his Eighth Amendment rights by failing to protect him from harm during phone usage prior to the April 3, 2016 attack, as raised in his first cause of action, should be dismissed.  (*See* Doc 19 at PageID 178).  The complaint includes no allegations suggesting that plaintiff was in fact harmed or in danger of harm prior to the April 3, 2016 attack, nor has plaintiff alleged that these defendants were aware of any danger to plaintiff, present during either attack, or deliberately indifferent to his safety.

To the extent that plaintiff seeks to hold these defendants liable based on his allegation that an internal memorandum from Sparks to Cool stated that utilizing phone lists and monitoring phone usage was intended to minimize inmate conflict over phone usage, plaintiff's allegations fail to suggest that these defendants were aware of a substantial risk of serious harm to plaintiff's health or safety or that these defendants acted with deliberate indifference.  Plaintiff alleges that defendant Cassner and other L7 block officers refused to implement the phone lists discussed in the memo.  (*See id.* at PageID 165, 168, 176).  However, plaintiff is unable to hold defendants Sparks, Warren, or Cool liable for Cassner or other officers' conduct on a theory of respondeat superior because it is well-settled that the doctrine of *respondeat superior* does not apply in § 1983 lawsuits to impute liability onto supervisory personnel.  *See, e.g., Wingo v. Tennessee Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) (per curiam) (citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981)).  Therefore, plaintiff may proceed with his claims that the

12

officers present at the time of the attacks failed to protect him; however, his claim that Sparks, Warren, and Cool failed to protect him should be dismissed.

Plaintiff's claim in cause of action two that defendants Cassner, Conschafsky, Toppins, Sparks, Warren, Cool, Irvin, and Reece violated his First Amendment right to access the telephone "by creating a hostile environment unsafe where SOCF's inmates viciously attacked one another over phone usage and kept the plaintiff from exercising his First Amendment right to phone access" should also be dismissed. The complaint contains no allegations that any of these defendants denied plaintiff the ability to use the telephone or otherwise violated his First Amendment rights. Accordingly, plaintiff's First Amendment claims against these defendants should be dismissed.

Plaintiff has also failed to state a First Amendment claim against defendant Mahlman to the extent that plaintiff claims that his modified access to the grievance process resulted in a constitutional violation. "The Sixth Circuit repeatedly has held that placement on modified access does not constitute an adverse action for purposes of a retaliation claim." *Weatherspoon v. Williams*, No. 2:14-cv-108, 2015 WL 2106401, at \*5 (W.D. Mich. May 6, 2015) (citing *Jackson v. Madery*, 158 F. App'x. 656, 660 (6th Cir. 2005); *Walker v. Michigan Dep't of Corr.*, 128 F. App'x 441, 446 (6th Cir. 2005); *Kennedy v. Tallio*, 20 F. App'x. 469, 471 (6th Cir. 2001); *Corsetti v. McGinnis*, 24 F. App'x. 238, 241 (6th Cir. 2001)). The right to file institutional grievances without being subject to retaliation extends only to the filing of non-frivolous grievances and "an ordinary person of reasonable firmness would not be deterred from filing non-frivolous grievances merely because he or she had been placed on modified status." *Walker*, 128 F. App'x. at 445–46. Accordingly, plaintiff has failed to state a claim upon which relief may

be granted to the extent that he alleges a First Amendment violation in connection with being placed on restricted access to the grievance process.

Plaintiff also fails to state a viable constitutional claim under the Fourteenth Amendment in causes of action three and five against defendants Haywood, Chinn, Cool, Sammons, Green, Broughton, Sears, and Erdos in connection with the RIB hearing because the challenged disciplinary action did not amount to a deprivation of a constitutionally protected liberty interest. In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court held that the Fourteenth Amendment confers on prisoners only a "limited" liberty interest "to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or which "will inevitably affect the duration of his sentence." *Sandin*, 515 U.S. at 484, 487; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Williams v. Wilkinson,* 51 F. App'x 553, 556 (6th Cir. 2002). The Sixth Circuit has held that confinement in segregation generally does not rise to the level of an "atypical and significant" hardship implicating a liberty interest except in "extreme circumstances, such as when the prisoner's complaint alleged that he is subject to an *indefinite* administrative segregation" or that such confinement was excessively long in duration. *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (citing *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008)) (emphasis in original); *see also Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir.) (holding that the prisoner's 8-year confinement in segregation was of "atypical duration" and thus "created a liberty interest that triggered his right to due process"), *cert. denied*, 133 S.Ct. 429 (2012). *Cf. Wilkinson v. Austin*, 545 U.S. 209, 223-24 (2005) (ruling that an inmate's transfer to Ohio's "supermax" prison "imposes an atypical and significant hardship" given the combination of extreme isolation of

14

inmates, prohibition of almost all human contact, indefinite duration of assignment, and disqualification for parole consideration of otherwise eligible inmates).

Here, plaintiff has not alleged that the challenged disciplinary proceeding resulted in the lengthening of his prison sentence, the withdrawal of good-time credits, or the deprivation of any necessities of life. Moreover, plaintiff has not alleged any facts to suggest that he was subjected to a lengthy disciplinary placement amounting to an atypical or significant hardship that would trigger constitutional concerns. Accordingly, because plaintiff does not have a protected liberty interest under the circumstances alleged herein, any claim against defendants for their conduct in the disciplinary proceedings fails to state a cognizable federal claim under the Fourteenth Amendment's Due Process Clause.

Plaintiff has also not stated a constitutional claim to the extent he has alleged in his second cause of action that defendants Cassner, Irvin, and Reece wrote false conduct reports against him. Erroneous or even fabricated allegations of misconduct by an inmate, standing alone, do not constitute a deprivation of a constitutional right. *See, e.g., Reeves v. Mohr*, No. 4:11cv2062, 2012 WL 275166, at *2 (N.D. Ohio Jan. 31, 2012) (and cases cited therein) (holding that the prisoner failed to state a claim upon which relief may be granted to the extent that he claimed he had "a constitutional right to be free from false accusations"). "A constitutional violation may occur, if as a result of an accusation, the Plaintiff was deprived of a liberty interest without due process." *Reeves, supra*, 2012 WL 275166, at *2 (citing *Sandin v. Conner*, 515 U.S. 472, 485 (1995)). However, as noted above, plaintiff's allegations are insufficient to trigger constitutional concerns because he has not alleged any facts even remotely suggesting that the challenged disciplinary action deprived him of a protected liberty interest.

Plaintiff's claim that the medical defendants—Seal, Prise, and Parsons—violated his Eighth Amendment rights by failing to place him in protective custody should also be dismissed. In the complaint plaintiff indicates that he contacted Dr. Seal and Mr. Parsons to request that he be placed in a residential treatment unit[3] to obtain better medical treatment and that the unit placement could help him avoid further attacks. (Doc. 19, at PageID 162). To the extent that plaintiff claims that the defendants failed to place him in the residential treatment unit or otherwise denied him medical care, plaintiff has been permitted to proceed with this claim. However, plaintiff's claim that the medical defendants denied him protective custody should be dismissed, as plaintiff does not allege that he requested protective custody or control from these defendants or that these defendants, as medical care providers, could provide him with such placement. Therefore, plaintiff's protective custody claims against these defendants should be dismissed.

Defendant Bell should also be dismissed as a party to this action. As noted above, plaintiff alleges in his fourth cause of action that Bell, along with defendants Spears and Summers, failed to protect him from harm in the July 10, 2016 attack. (Doc. 19 at PageID 163). However, the complaint does not allege that Bell was present during the attack or otherwise had the opportunity to protect plaintiff from harm. (*See id.* at PageID 168–70). Plaintiff's only other allegation against Bell is that Bell failed to perform adequate investigations into the attacks. (*See id.* at PageID 177). Prison officials whose only roles "involve their denial of administrative grievances and their failure to remedy the alleged [unconstitutional] behavior'" cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Nor does a prison official's

---

[3] ODRC policy 53-CLS-04 states that a Residential Treatment Unit is "[a] specialized housing unit within the institution that facilitates a secure treatment environment and on-site care from a multidisciplinary team consisting of psychiatrists, nurse practitioners, psychologists, social workers, nurses and other specialized mental health professionals." Viewed at www.drc.ohio.gov/policies/classification.

alleged failure to adequately investigate claims of misconduct rise to the level of "encouragement" that would make the official liable for such misconduct. *Knop v. Johnson,* 977 F.2d 996, 1014 (6th Cir. 1992); *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984). Therefore, plaintiff's claims against defendant Bell should be dismissed.[4]

Finally, plaintiff does not bring any causes of action against defendants McDonald, Howard, or Oppie despite naming them as defendants to this action.  Plaintiff's sole allegation against nurse McDonald is that McDonald provided him with pain medication for his pain following the attacks. (*See* Doc. 19 at PageID 170).  Such actions do not amount to deliberate indifference under the Eighth Amendment and the claim against McDonald should be dismissed. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  For the reasons stated above, plaintiff's allegations that defendants Howard and Oppie failed to conduct investigations into the attacks or wrote false conduct reports should also be dismissed for failure to state a claim upon which relief may be granted.

Accordingly, in sum, plaintiff may proceed with the following claims:  (1) Eighth Amendment failure to protect claims against defendants Toppins, Conschafsky, Spears, and Summers based on his allegations that these defendants failed to protect him during the April 3, 2016 and July 10, 2016 attacks; (2) Eighth Amendment claims against defendants Nolan, Mahlman, Cool, Davis, and Erdos based on his claim that he requested protective custody from

---

[4] To the extent that plaintiff seeks to hold Bell or any other defendant liable based on plaintiff's security classification or placement, as stated in the Court's December 2, 2016 Report and Recommendation (*see* Doc. 8 at PageID 64–65), these claims should be dismissed because plaintiff has no constitutional right to be placed in a particular prison or to be held in a specific security classification. *See, e.g., Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005); *Johnson v. Mohr,* No. 2:15cv86, 2015 WL 1526804, at *2 (S.D. Ohio Apr. 3, 2015) (Graham, J.); *Lawson v. Haddon*, No. 1:09cv551, 2009 WL 2242692, at *4 (W.D. Mich. July 16, 2009) (and cases cited therein); *see also McKune v. Lile,* 536 U.S. 24, 39 (2002) (citing *Meachum v. Fano,* 427 U.S. 215, 225 (1976)) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); *Jimenez v. United States,* No. 2:07cv819, 2007 WL 3232469, at *1, *3 (S.D. Ohio Nov. 1, 2007) (and cases cited and quoted therein) (inmates do not "have any constitutionally protected interest in a particular housing assignment or transfer to a particular prison").

these defendants prior to the second attack; and (3) Eighth Amendment claim for the denial of medical care against defendants Seal, Parsons, Prise, Goodman, Lahr, and Ford. *See* 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

Having found that plaintiff's remaining claims fail to state a claim upon which relief may be granted, these claims should be dismissed.

## IT IS THEREFORE RECOMMENDED THAT:

The complaint be **DISMISSED with prejudice** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1), with the exception of the following claims, which may proceed: (1) Eighth Amendment failure to protect claims against defendants Toppins, Conschafsky, Spears, and Summers based on his allegations that these defendants failed to protect him during the April 3, 2016 and July 10, 2016 attacks; (2) Eighth Amendment claims against defendants Nolan, Mahlman, Cool, Davis, and Erdos based on his claim that he requested protective custody from these defendants prior to the second attack; and (3) Eighth Amendment claim for the denial of medical care against defendants Dr. Seal, Parsons, Prise, Goodman, Lahr, and Ford.

## IT IS THEREFORE ORDERED THAT:

1. The United States Marshal shall serve a copy of the amended complaint, summons, the Order granting plaintiff *in forma pauperis* status, and this Order and Report and Recommendation upon defendants Toppins, Conschafsky, Spears, Summers, Nolan, Mahlman, Cool, Davis, Erdos, Seal, Parsons, Prise, Goodman, Lahr, and Ford as directed by plaintiff, with costs of service to be advanced by the United States.

2. Plaintiff shall serve upon defendants or, if appearance has been entered by counsel, upon defendants' attorney(s), a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed with the

18

Clerk of Court a certificate stating the date a true and correct copy of any document was mailed to defendants or defendants' counsel.  Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

      3.  Plaintiff shall inform the Court promptly of any changes in his address which may occur during the pendency of this lawsuit.

Date: _6/12/17_

                                            Karen L. Litkovitz
                                            United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

GARY LEE PULLEN,                                    Case No. 1:16-cv-894
      Plaintiff,

                                                     Barrett, J.
      vs.                                  Litkovitz, M.J.

CORRECTIONAL OFFICER
CONSCHAFSKY, et al.,
      Defendants.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).